UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                                **Plaintiff,**<br><br>        v.<br><br>**MICHAEL E. CONE and GREENVIEW INVESTMENT PARTNERS, L.P.,**<br><br>                               **Defendants.** | Civil Action No. **3:18-CV-2349** |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendants Michael E. Cone ("Cone") and Greenview Investment Partners, L.P. ("Greenview") (collectively "Defendants"), and alleges as follows:

**I.
SUMMARY**

1. From August 2017 through at least March 2018, Greenview and Cone, Greenview's founder and manager, orchestrated an unregistered securities offering fraud that victimized more than 60 investors across 26 states. Cone and Greenview marketed the company as a pooled investment vehicle, raising funds to purportedly finance cannabis-related businesses and promising investors massive returns to be paid from Greenview's investment revenues. In reality, Cone and Greenview ran a systematic fraud, misappropriating more than $3.3 million of investor funds for, among other things, Cone's lavish personal expenses.

2. Cone and Greenview used false and misleading marketing and offering materials

and deceptive sales pitches to lure investors into the fraud. Cone and Greenview misrepresented, among other things, that: (1) Greenview had a management team with a ten-year track record of profitably investing more than $100 million in cannabis-related businesses; (2) Greenview had provided outsized returns to more than 200 investors; and (3) investors could expect a 24% annual return. These were lies.

3. Greenview had no such track record of operations or investment success, and no basis for promising such returns. Greenview's operations were limited to the eight-month duration of the offering fraud, and it did not generate any returns from investing in cannabis businesses. Worse, Cone and Greenview misused or misappropriated a significant portion of the investor proceeds. Cone took hundreds of thousands of dollars in cash for his personal use, including purchasing multiple luxury cars. Additionally, Cone and Greenview used a substantial portion of the remaining funds to pay purported returns to prior investors.

4. Moreover, Cone and Greenview took active steps to conceal Cone's actual identity and his association with the company. Due to Cone's criminal background, he created a collection of fake identities to mislead investors about Greenview's actual management team and used an alias to conceal his own involvement.

5. By reason of these activities and the conduct described in more detail below, Cone and Greenview have violated and, unless enjoined, will continue to violate, the registration and antifraud provisions of the federal securities laws, specifically Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

6. In the interest of protecting the public from any further fraudulent activity and harm, the Commission brings this action against the Defendants and seeks permanent injunctive

relief, disgorgement of ill-gotten gains resulting from Defendants' violations of the federal securities laws, accrued prejudgment interest on those ill-gotten gains, and civil monetary penalties.

## II.
## JURISDICTION AND VENUE

7. Defendants purported to offer and sell securities in the form of limited partnership interests in Greenview, which are investment contracts and therefore securities under Section 2(a)(1) of the Securities Act [15 U.S.C. §77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. §78c]. As such, the Court has jurisdiction over this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78(aa)].

8. Venue is proper because a substantial part of the events, transactions, acts, practices, and courses of business giving rise to the claims alleged herein occurred within the Northern District of Texas, Dallas Division. Additionally, Greenview maintained its headquarters and principal place of business in Addison, Texas, in Dallas County.

## III.
## DEFENDANTS

9. Michael E. Cone, 36, formerly of McKinney, Texas, controlled Greenview using the alias "Brian Gwinn." Prior to founding Greenview in 2017, Cone was arrested and pled guilty to multiple crimes, including felony delivery of marijuana, theft, DUI, and misdemeanor forgery and assault. Cone is not registered in the securities industry in any capacity.

10. Greenview Investment Partners, L.P., is a Delaware limited partnership previously located in Addison, Texas. According to Greenview's organizing documents, Greenfield and Wright, LLC ("G&W"), a Delaware limited liability company, served as

Greenview's general and organizing partner. Although Cone was not formally associated with G&W, he controlled and managed all of Greenview's operations. These documents list "Brian Gwinn," Cone's alias, as Greenview's executive officer. Greenview is not a reporting company or registered with the SEC, and it has no disciplinary history.

## IV.
## STATEMENT OF FACTS

**A.     Greenview's Offering.**

12.     In June 2017, Cone planned to leverage his knowledge of the cannabis industry and start a cannabis-related investment fund. However, because of his considerable criminal history, Cone needed someone else to serve as a front man for the business. Cone employed an acquaintance from Michigan to perform various tasks, but Cone controlled everything, including (but not limited to) opening various bank accounts for Greenview and G&W, handling all transactions within those accounts, and serving as G&W's purported managing member.

12.     Cone and Greenview used written offering materials, including a prospectus and sales brochures, to offer securities to prospective investors. Cone drafted, reviewed, and/or otherwise had authority over the contents of Greenview's offering materials. Greenview purported to offer and sell investors limited partnership interests in Greenview, in exchange for a minimum investment of $50,000. In these documents, Cone described Greenview as a pooled investment fund that generated revenue through funding cannabis-related businesses and then sharing in those businesses' profits. Investors were to be wholly passive and play no role in managing the partnership.

13.     The offering materials made no mention of Cone, instead stating that "Brian Gwinn" was Greenview's executive officer. Greenview filed a Form D with the Commission, indicating that its offering was exempt from the securities registration requirements of the federal

securities laws. Greenview's Form D listed "Brian Gwinn" as its executive officer.

**B.     General Solicitation of Securities.**

14.     Cone and Greenview solicited investors through Greenview's publicly available website. Cone used professional developers to create the website, but he authored (and/or had authority over) all of the content. Prospective investors could read alleged facts about Greenview, its offering of limited partnership interests, and its purported investment success. Interested investors could request additional information about Greenview's offering through the website.

15.     Cone and Greenview also used telephonic sales pitches to entice investors. Greenview employed a "boiler room" sales staff that Cone hired and trained to cold-call potential investors across the country to solicit investments. Based on Cone's training, the sales staff parroted the information in the offering materials and on the company's website.

16.     Cone purchased lead lists to identify prospective investors and directed Greenview's sales staff to use the lists for their solicitations. Because the investor prospects came from purchased lead lists, these investors and prospective investors had no prior association with each other, or with Cone or Greenview, before investing. In addition, Cone, Greenview, and the sales staff took no steps to verify accreditation status of the prospective investors.

17.     Typically, Cone relied on his sales staff to pitch prospective investors over the phone and generally avoided direct contact with investors. Occasionally, however, Cone, using an alias, spoke with investors and echoed the same information contained in the sales materials he drafted.

18.     For each sale of limited partnership interests in Greenview, the sales staff

received transaction-based compensation of eight to ten percent of the sales proceeds.

**C.    Misrepresentations to Investors.**

19.    Greenview's written offering materials and its website were replete with lies, including the following statements:

- Greenview was a successful investment company and had been in business since 2006, with three offices across the country;

- Greenview served businesses in all 30 states where recreational and/or medical marijuana is legal and had raised between $112 million and $152 million in debt financing for cannabis companies throughout the United States and in other markets, such as Canada;

- Greenview's cannabis investment clients included one of the first cannabis firms publicly listed on the New York Stock Exchange;

- Greenview had 271 investors, who had received 24% annual returns, which investors could expect in the future;

- Greenview employed a retired agent from the U.S. Drug Enforcement Administration ("DEA") to assist with compliance issues; and

- Greenview's management team, led by Cone's alter ego "Brian Gwinn," had extensive private equity and investment experience and a ten-year track record of profitably investing more than $100 million in cannabis-related businesses.

20.    In reality, Greenview had no prior operating or investment history at the time the offering began. The addresses and numbers given for its alleged offices in California and New York were drop boxes and answering services that funneled requests back to Greenview's sole location in Texas. Greenview had no history of generating successful returns for the alleged 200-plus investors, and no basis for claiming actual or expected annual returns of 24 percent. As the Greenview offering progressed, Cone continued to upwardly revise the representations about the number of investors and amounts raised to falsely portray that Greenview was growing.

21.    Moreover, Greenview's purportedly well-credentialed management team was a fiction, including Cone's alter ego "Brian Gwinn." Using biographies he found online, Cone

made up phony executives for Greenview's management team, which, in fact, did not include a former DEA agent.

22. In addition to these misrepresentations, Cone included links on Greenview's website to articles that supposedly had appeared in credible publications, but which were, in fact, promotional releases Cone paid for to perpetuate the falsehood that "Brian Gwinn" was a real person and an expert investor in the cannabis industry.

**D.     Application of offering proceeds.**

23. By March 2018, Greenview raised approximately $3.3 million from about 60 investors. During its existence, Greenview only made a single investment of $400,000 in a cannabis company. By March 2018, however, that cannabis company, which was not listed on a national exchange, had yet to harvest a crop or make any payments to Greenview. As a result, all payments that Cone and Greenview made to its investors came from investment funds it received from other investors.

24. In addition to payments of purported returns to earlier investors, Cone and Greenview misused the remainder of the overwhelming majority of investor funds to pay sales commissions to Greenview's sales staff and for Cone's personal use. Cone withdrew at least 13% of the investor funds in cash (about $450,000) and spent hundreds of thousands of dollars of investor funds on meals, watches, designer clothes, accessories, and luxury automobiles.

**E.     Criminal Case.**

25. In February 2018, federal criminal authorities executed a warrant on Greenview's offices in Addison, Texas and seized Cone's assets, as well as those of Greenview and its general partner, G&W. To date, the FBI has seized approximately $1.4 million in cash and assets, including bank accounts, Rolex watches, a 2017 Bentley Flying Spur, and a 2015 Rolls Royce

Wraith.

26. On March 21, 2018, Cone was arrested in Reno, Nevada on an outstanding warrant from the state of Pennsylvania.

27. After the criminal seizures, Greenview continued to solicit investments, raising at least another $400,000 from four investors in late February 2018 and early March 2018.

## V.
## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Offers and Sales of Unregistered Securities**
**Violations of Securities Act Sections 5(a) and 5(c)**
**[15 U.S.C. §§ 77e(a) and 77e(c)]**

28. The Commission repeats and re-alleges Paragraphs 1-27 above, as if fully set forth herein.

29. By engaging in the conduct described herein, Defendants Cone and Greenview, directly or indirectly, singly or in concert with others, (a) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (b) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; or (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

30. No valid registration statement was filed or was in effect with the Commission in connection with Defendants' offer or sale of securities.

RE: *SEC v. Greenview, et al.*                                                                                                  Page 8
Complaint

31. There were no applicable exemptions from registration, and Defendants Cone and Greenview therefore violated, and unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## SECOND CLAIM FOR RELIEF

### Violations of the Antifraud Provisions of the Securities Act
### Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

32. The Commission repeats and re-alleges Paragraphs 1 through 27 above, as if fully set forth herein.

33. By engaging in the conduct described herein, Defendants Cone and Greenview directly or indirectly, singly or in concert with others, in the offer or sale of securities and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails: a) employed a device, scheme, or artifice to defraud; b) obtained money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or c) engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon purchasers of securities.

34. With regard to their violations of Section 17(a)(1) of the Securities Act, Defendants Cone and Greenview acted intentionally, knowingly, or with severe recklessness. With regard to their violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act, Defendants acted at least negligently.

35. By engaging in this conduct, Defendants Cone and Greenview violated, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

### Violations of the Antifraud Provisions of the Exchange Act
### Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5]

36. The Commission repeats and re-alleges Paragraphs 1 through 27 above, as if fully set forth herein.

37. By engaging in the conduct described herein, Defendants Cone and Greenview directly or indirectly, singly or in concert with others, by the use of means or instrumentalities of interstate commerce, or of the mails, or of facilities of a national securities exchange, in connection with the purchase or sale of a security, knowingly or with severe recklessness: a) employed a device, scheme, or artifice to defraud; b) made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or c) engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

38. Defendants Cone and Greenview engaged in such conduct intentionally, knowingly, or with severe recklessness.

39. By engaging in this conduct, Defendants Cone and Greenview violated, and unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17C.F.R. §§240.10b-5].

## PRAYER FOR RELIEF

For these reasons, the Commission respectfully requests that this Court enter a final judgment:

 a. Permanently enjoining Defendants Cone and Greenview from violating Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

b. Permanently enjoining Greenview, directly or indirectly, from participating in the issuance, purchase, offer, or sale of any securities, including, but not limited to, through any entity owned or controlled by it;

c. Permanently enjoining Cone, directly or indirectly, from participating in the issuance, purchase, offer, or sale of any securities, including, but not limited to, through any entity owned or controlled by him; provided, however, that such injunction shall not prevent Cone from purchasing or selling securities for his own personal account;

d. Permanently enjoin Cone from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act;

e. Ordering Defendants Cone and Greenview to disgorge ill-gotten funds and benefits obtained, or to which they were not otherwise entitled, as a result of the violations alleged herein, plus prejudgment interest thereon;

f. Ordering Defendant Cone to pay a civil penalty under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

g. Granting such additional relief as the Court deems just, appropriate, and equitable.

DATED: September 5, 2018.       Respectfully submitted,

*/s/ Janie L. Frank*
Janie L. Frank
Texas Bar No. 07363050
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102-6882
(817) 978-6478
(817) 978-4927 (fax)
FrankJ@sec.gov